HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANNIE FORESTIER, Guardian of Ermine
Forestier; and ERMINE FORESTIER,

Plaintiffs,

v.

THE CITY OF VANCOUVER, a
Municipality; and AMY OLIVER and
Community,

Defendants.

Case No. C05-5042 RBL

ORDER

THIS MATTER comes on before the above-entitled Court upon Defendant City of Vancouver's Motion to Compel Production of Certain Documents pursuant to FRCP 34 [Dkt. #41], Defendant City of Vancouver's Motion for a Protective Order pursuant to FRCP 26(a) [Dkt. #48], and Defendants Olivers' Motion to Compel Production of Certain Documents pursuant to FRCP 34 and Motion for a Protective Order under FRCP 26(c) [Dkt. #55].

Having considered the entirety of the records and file herein and having considered that oral argument is not necessary, the Court rules as follows:

## BACKGROUND

This case involves a pedestrian, Ermine Forestier, who while crossing Fort Vancouver Way in Vancouver, Washington, on January 29, 2002, was struck by a vehicle driven by defendant Amy Oliver. Ms. Forestier was admitted to the Level I Trauma Center at Legacy Emanuel Hospital. Upon discharge from

ORDER
Page - 1

Legacy Emanuel Hospital on March 18, 2002 she was flown to the University Hospital in Rouen, France.  The discharge summary from Legacy Emanuel contained the following diagnoses:  traumatic brain injury/diffuse axonal injury with left cerebellar contusion, left frontal contusion, intraventricular hemorrhage, corpus callosum contusion, left liver laceration (grade I), basilar skull fracture, left frontoparietal epidural hematoma, left tibia and fibular fracture (closed), right ankle sprain grade 3, left anterior cruciate medial collateral injury grade 3, left sacral wing fracture, left superior and inferior pubic body fracture, left parietal scalp laceration, traumatic anemia, left frontoparietal chronic subdural hygroma with a right to left shift, and supratentorial and infratentorial parenchymal contusions.  Decl. of Garth Jones ("Jones Decl."), Exh. 2, IME Report of Robert S. Djergaian, M.D., Dkt. #53.  She stayed in the hospital in Rouen for three months, and was then transferred to a rehabilitation hospital in Le Havre, France, where she remained for approximately two years until September, 2004.  Jones Decl., Exh. 1, IME Report of Donna Klein, M.D., Dkt. #53.  She continues to receive outpatient therapy.  Id.  Plaintiffs filed this lawsuit in January, 2005 alleging that Ms. Forestier's injuries were caused by the City of Vancouver's negligent design of the roadway and from Mrs. Oliver's negligent operation of her vehicle.

In May, 2006 Ms. Forestier traveled back to the United States where she underwent four separate Independent Medical Exams ("IME's") at the request of the defendants.  She underwent a psychiatric examination by Deena Klein, M.D.; a physical medicine and rehabilitation examination by Robert S. Djeraian, M.D.; a neuropsychological evaluation by Donna Wicker, Ph.D.; and, a neurological examination by Reed C. Wilson, M.D.  Without ruling on the defendants' liability for the specific injuries sustained or the extent of their residual effects, it is clear to the Court that Ms. Forestier suffered severe injuries in the accident and will remain permanently disabled for the rest of her life.

## MOTION TO COMPEL PRODUCTION OF CERTAIN DOCUMENTS

Defendants seek to compel plaintiffs to produce all of Ms. Forestier's medical records from her hospital stays and outpatient rehabilitation in France.  Defendants state that they have received only 311 pages of plaintiff's medical records documenting her care in France, that the records they have received do not include records from nine of the seventeen French treatment providers identified in plaintiffs' supplemental disclosures, and that the records provided are virtually devoid of treatment records after June, 2004.  The records provided also did not include x-rays, CAT scans, test results, psychological records or handwritten notes.  Defendant

1   City of Vancouver's Motion, pp. 4-5, Dkt. #41. Defendants, in addition to the medical records, also seek a

2   copy of plaintiffs' insurance policy which provides coverage for Ms. Forestier's medical care in France.

3       Plaintiffs argue in opposition to the motion to compel: (1) they have provided all the medical records

4   that exist; (2) plaintiffs do not have possession, custody, or control of the medical records, and; (3) defendants

5   must avail themselves of the procedures available under the Federal Rules of Civil Procedure (and presumably

6   the Hague Convention) to procure the records directly from the medical providers. Plaintiffs offer no argument

7   against production of the insurance policy.

8       Rule 34 provides that "[a]ny party may serve on any other party a request (1) to produce . . .

9   documents . . . which are in the possession, custody, or control of the party upon whom the request is served

10  [ ] . . . ." Fed. R. Civ. P. 34(a). Control is defined not only as possession, it is also "the legal right to obtain

11  documents upon demand." *United States v. International Union of Petroleum & Indus. Workers*, 870 F.2d

12  1450, 1452 (9th Cir. 1989); *In re Citric Acid Litigation*, 191 F.3d 1090, 1107 (9th Cir. 1999) ("the legal control

13  test is the proper standard under Rule 45"). The legal control test is the standard under both Rule 34 and Rule

14  45. *In re ATM Fee Antitrust Litigation*, 233 F.R.D. 542 (N.D. Cal. 2005). The "practical-ability-to-obtain

15  documents" test, urged upon this Court by the defendants, has been squarely rejected by the Ninth Circuit.

16  *Citric Acid*, 191 F.3d at 1107.

17      Plaintiffs' first two arguments in opposition to the motion to compel realistically go hand-in-hand.

18  First, plaintiffs claim they have hired a French attorney and have expended over $16,000.00 U.S. to obtain Ms.

19  Forestier's medical records in France and that they have turned over to the defendants all the records in their

20  possession. Secondly, to the extent more records exist, plaintiffs claim they do not "control" those records,

21  and thus cannot be compelled to produce them. Plaintiffs rely on *Clark v. Vega Wholesale, Inc.*, 181 F.R.D.

22  470 (D. Nev. 1991) for the proposition that plaintiff does not control her medical records. *Clark* involved a

23  motion to compel the plaintiff's signature on a medical records release form. Under the facts before it, the

24  district court determined that it would not order the plaintiff to sign a release form because "[t]he relationship

25  between the Plaintiff and her doctor is not sufficient to establish control [ ]" and "the Defendants can secure

26  copies of the requested documents as readily as the Plaintiff." *Id*. Unlike *Clark*, defendants are not seeking

27  to compel plaintiff to sign release forms, she has already signed medical release forms for her providers in

28  France. Decl. of Dana Penilton, para. 7, Exh. 1, Dkt. #81. And, unlike the facts in *Clark*, defendants here

cannot "secure copies of the requested documents as readily as plaintiff" because those copies are in France, plaintiffs are in France, and defendants are in the United States. Furthermore, plaintiffs have demonstrated "control" of the medical records. Mrs. Forestier, Ermine's mother, legal guardian, and a plaintiff in this matter, has obtained some of her daughter's medical records by submitting a "Medical Records Review" form to one of the facilities that cared for Ermine. <u>Decl. of Julie A. Brown, para. 15, Exh. 3, Dkt. #43</u>.

Plaintiffs' final argument that defendants should avail themselves of the Federal Rules of Civil Procedure (and presumably the Hague Convention) to procure the medical records directly from the treatment providers is undercut by the facts in this case. The process the defendants would have to go through to obtain the plaintiff's medical records situated in France is costly, time consuming and a waste of resources both here and in France. Because plaintiffs reside in France and have demonstrated control of the medical records, it is not unfair or unreasonable to impose the obligation upon plaintiffs to provide the medical records. *See Societé Nationale Industrielle Aerospatiale v. U.S. District Court*, 482 U.S. 519 (1987). For the reasons stated and because plaintiffs have not opposed defendants' request for a copy of plaintiffs' insurance policy, the Motion to Compel Production of Certain Documents will be granted.

<u>**MOTION FOR A PROTECTIVE ORDER**</u>

Defendants seek a protective order to relieve them from answering 177 Requests for Admissions propounded by plaintiffs. The Requests for Admissions ask defendants to admit or deny 175 separate statements taken from the four IME reports generated by defendants' medical examiners, and two statements taken from Ms. Forestier's hospital records. <u>Decl. of Kenneth Wilcox, para. 5, Dkt. #52</u>.

Rule 36 provides "[a] party may serve upon any other party a written request for the admission . . . of the truth of any matters within the scope of Rule 26(b)(1) . . .." <u>Fed. R. Civ. P. 36(a)</u>. Rule 26 (b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . .." <u>Fed. R. Civ. P. 26(b)(1)</u>. However, Rule 26(b)(4) carves out an exception for trial experts and provides that discovery as to experts may only be had through depositions or interrogatories. <u>Fed. R. Civ. P. 26(b)(4)(A), (B)</u>. Defendants argue that plaintiffs are thus violating the discovery rules as to experts. Plaintiffs contend that they are not seeking to <u>discover</u> any new facts, they are merely seeking to require defendants to confirm the facts as set forth in their experts' reports.

Whether or not plaintiffs' Requests for Admissions violate the discovery rules as to experts is not the

1  crucial issue here.  All of defendants' experts "qualified" their opinions as to the current extent of Ms.

2  Forestier's injuries and her prognosis for the future.  The opinions were "qualified" because the examining

3  experts had not been provided all of Ms. Forestier's medical records.  The crucial issue is thus whether it

4  would be just to bind defendants to the "qualified" findings of their experts when plaintiffs have failed in their

5  obligation to provide defendants with the records upon which the experts require to form opinions.  This

6  attempt by plaintiffs to bind defendants to expert opinions qualified by the inability to review the complete

7  medical records of Ms. Forestier rings of "gotcha."  This Court does not countenance games of "gotcha" in

8  the serious matters at hand.  Defendants' Motion for a Protective Order will be granted.  Therefore, it is hereby

9  **ORDERED** that Defendant City of Vancouver's Motion to Compel Production of Certain Documents

10  pursuant to FRCP 34 [Dkt. #41] is **GRANTED**.  Defendants Olivers' Motion to Compel [Dkt. #55] is also

11  **GRANTED**.  Plaintiffs shall provide all of Ms. Forestier's French medical records and insurance policy within

12  thirty (30) days of entry of this Order.  It is further

13  **ORDERED** that Defendant City of Vancouver's Motion for a Protective Order pursuant to FRCP

14  26(c) [Dkt. #48] is **GRANTED**.  Defendants Olivers' Motion for a Protective Order [Dkt. #55] is also

15  **GRANTED.**

16  The Clerk shall send uncertified copies of this order to all counsel of record, and to any party

17  appearing pro se.

18  Dated this 5th day of October, 2006.

20  RONALD B. LEIGHTON
21  UNITED STATES DISTRICT JUDGE